■ VESTED BUSINESS BROKERS, LTD., Respondent, v DARLENE RAGONE et al., Appellants. [17 NYS3d 447]—

In an action, inter alia, to recover damages for breach of a covenant not to compete, the defendants appeal from (1) an order of the Supreme Court, Suffolk County (Whelan, J.), dated April 8, 2014, which denied their motion to vacate their default in appearing at a conference on September 20, 2013, and (2) a judgment of the same court entered April 29, 2014, which is in favor of the plaintiff and against them, determining that the one-year covenant not to compete was valid, enjoining the defendants from violating or causing the violations of the terms of the underlying agreement and the nondisclosure provisions thereof, until April 2016, and after an inquest awarding $350,000 for lost commissions, $500,000 for future damages, and $250,000 for punitive damages, is in favor of the plaintiff and against them in the principal sum of $1,100,000.

Ordered that the appeal from the order is dismissed, without costs or disbursements; and it is further,

Ordered that the judgment is modified, on the law and the facts, by reducing the award to the plaintiff from the principal sum of $1,100,000 to the principal sum of $150,000; as so modified, the judgment is affirmed, without costs or disbursements, and the matter is remitted to the Supreme Court, Suffolk County, for the entry of an appropriate amended judgment.

The appeal from the order must be dismissed because the right of direct appeal therefrom terminated with the entry of the judgment in the action (see Matter of Aho, 39 NY2d 241, 247 [1976]). The issues raised on the appeal from the order are brought up for review and have been considered on the appeal from the judgment (see CPLR 5501 [a] [1]).

The plaintiff, Vested Business Brokers, Inc. (hereinafter Vested), maintained a confidential website which Vested asserts contained detailed information with respect to sellers and buyers of businesses. On October 11, 2007, Vested and the defendant Darlene Ragone executed an independent contractor agreement, wherein Ragone promised not to disclose listings on the website while working for Vested, and "for five (5) years thereafter." The agreement further stated that if Ragone voluntarily left her association with Vested, she agreed "not to act as a business broker in any geographical market where [she] acted for [Vested] for a period of not less than twelve (12) months thereafter." On April 6, 2011, Ragone voluntarily terminated her association with Vested.

Vested commenced this action in February 2012, alleging that starting in January 2011, the defendants formed their own competing business brokerage firm, Moxie Business and Consulting, Inc. (hereinafter Moxie), using Vested's confidential information. The defendants, represented by counsel, answered, counterclaiming for injunctive relief and damages resulting from Vested's alleged continued use of Ragone's name and telephone number for their business purposes after April 6, 2011.

In an order dated June 25, 2013, the defendants' counsel's motion for leave to withdraw as counsel was granted without opposition. The action was stayed until August 30, 2013, to afford the defendants an opportunity to obtain new counsel. A conference scheduled for September 20, 2013, remained on the calendar, and the defendants were warned that failure to appear ready for the conference on that date "may result in the imposition of sanctions attendant with defaults, including the dismissal of the pleadings served by any party in default." The defendants did not deny receiving a copy of that order, but claimed that they were not aware of its import.

The defendants failed to appear for the conference, and in an order dated September 20, 2013, they were adjudicated in default, and their answer and counterclaim were stricken. After an inquest as to damages, the Supreme Court awarded Vested $350,000 for lost commissions, $500,000 for future damages, and $250,000 for punitive damages.

By order to show cause dated February 24, 2014, the defendants moved to vacate their default, and contested the proof of damages submitted at the inquest. The Supreme Court, in the order appealed from, concluded that the defendants failed to establish a reasonable excuse for their failure to appear at the September 20, 2013, conference, and therefore, it was unnecessary to determine whether the defendants had a meritorious defense to the plaintiffs' claims.

In seeking to vacate its default in appearing at a conference, a defendant must establish both a reasonable excuse for its default and a potentially meritorious defense to the action (see CPLR 5015 [a] [1]; Robinson v Plaro Estates, Inc., 119 AD3d 542, 544 [2014]; Hanscom v Goldman, 109 AD3d 964 [2013]; 9 Bros. Bldg. Supply Corp. v Buonamicia, 106 AD3d 968 [2013]). Here, the defendants failed to proffer a reasonable excuse for their default. Therefore, the question of whether the defendants had a potentially meritorious defense need not be addressed (see Cervini v Cisco Gen. Constr., Inc., 123 AD3d 1077 [2014]; Matter of Proctor-Shields v Shields, 74 AD3d 1347 [2010]; Select Papers v College Promotions Corp., 241 AD2d 675, 676 [1997]).

However, this Court may consider whether excessive damages were awarded (see Quigley v Coco's Water Café, Inc., 43 AD3d 1132 [2007]; Bajwa v Saida, Inc., 6 AD3d 471 [2004]; Neuman v Greenblatt, 260 AD2d 616 [1999]). "An unwarranted and excessive award after inquest will not be sustained, as to do otherwise 'would be tantamount to granting the plaintiffs an "open season" at the expense of a defaulting defendant' " (Neuman v Greenblatt, 260 AD2d 616, 617 [1999], quoting Brosnan v Behette, 186 AD2d 165, 167 [1992]).

Here, the damages awarded consisted of $350,000 for lost commissions, $500,000 for future damages, and $250,000 for punitive damages. There was no proof of future damages, and that award was duplicative of the award of injunctive relief (see AIU Ins. Co. v Robert Plan Corp., 44 AD3d 355 [2007]).

Punitive damages are generally not recoverable in an action to recover damages for breach of contract, unless the breach of contract also involves a fraud "evincing a high degree of moral turpitude, and demonstrating such wanton dishonesty as to

imply a criminal indifference to civil obligations, and where the conduct [is] aimed at the public generally" (*Reads Co., LLC v Katz*, 72 AD3d 1054, 1057 [2010] [internal quotation marks omitted]; *see Tartaro v Allstate Indem. Co.*, 56 AD3d 758 [2008]). The evidence adduced at the inquest did not establish grounds to award punitive damages (*see Neuman v Greenblatt*, 260 AD2d 616 [1999]).

With respect to lost commissions, Vested argued at the inquest that it established $225,000 in lost commissions "based on the sales that were testified to" before the court. Nevertheless, the court awarded $350,000 for lost commissions. Our review of that evidence adduced at the inquest indicates that an award of $150,000 constitutes reasonable compensation for lost commissions, based upon 10% of the specific sales established by the testimony of Vested's witnesses at the inquest.

The defendants' remaining contentions are without merit. Eng, P.J., Hall, Hinds-Radix and LaSalle, JJ., concur.